## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTIAN DEJESUS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 06-553-JJF |
| | ) | |
| THOMAS CARROLL, Warden | ) | |
| and JOSEPH R. BIDEN III, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents.[1] | ) | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In May 2004, the petitioner, Christian DeJesus, was convicted in a Delaware Superior Court jury trial of first degree burglary, first degree unlawful imprisonment, four counts of possession of a deadly weapon during the commission of a felony, and three counts of aggravated menacing. (Superior Court Criminal Docket #0303004601, D.I. 29). Superior Court, in *DeJesus v. State,* 2005 WL 2360680 (Del. Super. 2005)(*DeJesus II*)(Exhibit B), summarized the circumstances of DeJesus' crimes:

> The State offered the testimony of Marisol Ayala and her two daughters, whose house Defendant barged into on Feb. 14, 2003. Ms. Ayala stated that she was sitting on her porch at 116 Scott Street in Wilmington when a man drove up in a big green car. He got out of the car and asked Ms. Ayala for the whereabouts of a man named "Moreno." When Ms. Ayala said that Moreno was not in her house, he grabbed her by the arm, pointed a gun at her head, and told her to open the door to the house. By this time,

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Attorney General Joseph R. Biden III, assumed office on January 2, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case.

Ms. Ayala was crying and screaming. She opened the outside door and knocked on the inside door, which her five-year-old daughter had locked. When the little girl unlocked the door, the intruder yanked it open, grabbed the child, and held his gun to her head. He threatened to kill the little girl if Ms. Ayala did not tell him where Moreno was. The mother cried and screamed, saying over and over that she did not know where Moreno was. She begged the gunman to leave her child alone.

Ms. Ayala's teen-aged daughter was in the kitchen when she heard a ruckus in the other room. She came to the front room where she saw a man holding a gun to her younger sister's head. She ran from the house because she was pregnant and feared for her child. She saw the man drive away in a blue/green car.

DeJesus was sentenced to a term of twelve years imprisonment with a term of probation to follow. *DeJesus II* at *1. On appeal, the Delaware Supreme Court affirmed DeJesus' convictions and sentence. *DeJesus v. State,* 2005 WL 65865 (Del. 2005)(*DeJesus I*)(Exhibit A). DeJesus filed a motion for postconviction relief in March 2005, which was denied by the Delaware Superior Court. *See DeJesus II.* Superior Court ruled that all of DeJesus' claims were meritless. *Id.* Superior Court's decision in *DeJesus II* was affirmed by the Delaware Supreme Court in May 2006. *DeJesus v. State,* 2006 WL 1506205 (Del. 2006)(*DeJesus III*)(Exhibit C).

<u>Discussion</u>

In his petition for federal habeas relief, DeJesus raises the following grounds for relief: (1) his attorney, Ralph Wilkerson, provided constitutionally deficient assistance by not filing a motion to dismiss or a motion to sever charges added by the State after a preliminary hearing, by not cross-examining DeJesus' six-year-old victim, by not filing an appeal on his behalf, and by moving to dismiss the indictment based on Ayala's recantation; and (2) that one of his victims, Marisol Ayala, had been coerced by the police and the prosecutor into falsely testifying against him under threat of imprisonment.

2

*Claim One – Ineffective assistance of counsel*

DeJesus argues that his attorney was ineffective where he did not a) move to dismiss charges against DeJesus when Marisol Ayala, DeJesus' victim, wrote two letters recanting the identification she made to police; b) file a motion to dismiss or a motion to sever charges added by the State after a preliminary hearing; c) cross-examine DeJesus' six-year-old victim, and d) file an appeal on his behalf. DeJesus' first argument, that his attorney should have moved to dismiss the charges against him because one of the witnesses against him recanted, has never been presented to the Delaware Supreme Court. This claim, therefore, is barred as unexhausted. The remainder of DeJesus' charges of ineffective assistance, however, were presented to the Delaware Supreme Court in *DeJesus III*, thereby exhausting state remedies. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). DeJesus' claims, however, do not provide a basis for relief.

*a. Unexhausted Claim*

Prior to trial, Marisol Ayala wrote two letters professing DeJesus' innocence. *DeJesus II* at *2. The existence of these letters was exposed to the jury upon cross-examination of Ayala. *Id.* DeJesus argues that his attorney was constitutionally ineffective by not filing a motion to dismiss the indictment based on Ayala's letters. *See* Opening Brief at 3. As to this claim, DeJesus has failed to exhaust state remedies.

In order to exhaust state remedies, DeJesus must have presented to the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990); *Gibson v.*

3

*Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). In turn, the claim must have been fairly presented to the state's highest court. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted). DeJesus did not allege in his postconviction action or in the appeal therefrom that his attorney was ineffective for not filing a motion to dismiss the indictment based on Ayala's letters.

If, however, there is no available state remedy, then DeJesus is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). Because DeJesus failed to raise this particular ineffectiveness claim in *DeJesus II*, he is procedurally barred from raising the claim in subsequent post-conviction filings. *See* DEL. SUPER. CT. CRIM. R. 61(i)(2). DeJesus' first ineffective assistance of counsel claim is, therefore, excused from the exhaustion requirement, but procedurally defaulted. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and resulting prejudice, or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). DeJesus has not alleged cause for his failure to raise his first ineffectiveness claim on appeal of the Superior Court's decision in *DeJesus II*. As a result, DeJesus has not established cause for his procedural default, and that is sufficient to warrant dismissal of his federal claims. *E.g., Elliott v. Kearney*, 2004 WL 724958, *4 n.5 (D. Del. Mar. 31, 2004)(Exhibit D); *See also Coleman*, 501 U.S. at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995) (citing cases).

4

*b. Exhausted claims*

DeJesus argues that his attorney was ineffective because he did not cross-examine the six-year-old victim and because he did not file a brief on DeJesus' behalf. Further, DeJesus argues that his attorney was constitutionally ineffective for failing to "file severance motion prior to trial against joinder of offenses to indictment after the petitioner had already been indicted and on bail for (6) weeks." (Opening Brief at 4). Because DeJesus presented these claims to the Delaware Supreme Court in *DeJesus III*, they have been properly exhausted. DeJesus, however, is not entitled to relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir.2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing

petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001). In this case, the decision of the state courts was a reasonable application of the relevant constitutional standards.

To prevail on a claim of ineffective assistance of counsel, DeJesus must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised §2254. *See Gattis v. Snyder*, 278 F.3d 222, 236 (3d Cir. 2002); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434-35 (D.Del. 1998). A habeas petitioner must allege facts which, if accepted as true, would

satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Against this backdrop, DeJesus has not established that the state court's decision warrants relief under § 2254.

DeJesus argues that his attorney was ineffective because he did not cross-examine DeJesus' six-year-old victim, Grace Almodovar. At trial, Almodovar testified that a dark-skinned man came to her house and pointed a gun at her face and that her sister, Solimari Torres, watched. (Appendix to Petitioner's Opening Brief, Trial Transcript, May 13, 2004, at 31-34). At no time did Almodovar identify DeJesus as the man who attacked her family. It is axiomatic to suggest that cross-examining a child victim of a violent crime carries substantial risk for the defendant. DeJesus's attorney was, therefore, demonstrating sound trial strategy when he declined to cross-examine Almodovar. Further, DeJesus does not suggest what would have been gained from the cross-examination of the six-year-old. He has, therefore, not alleged prejudice from his attorney's perceived failure. Superior Court found that "the decision not to cross-examine a child witness falls within the broad range of strategic choices that will not be

dissected without a showing of prejudice, which Defendant has not shown." *DeJesus II* at *3 (citations omitted). Because the state court's reasoning below was a reasonable application of *Strickland,* DeJesus is not entitled to relief on this claim.

DeJesus also argues that his attorney was constitutionally ineffective by not filing a direct appeal of his convictions. Though DeJesus suggests that his attorney did not file any appeal, his attorney instead filed a notice of appeal and moved to withdraw under Supreme Court Rule 26(c). As noted by the Delaware Supreme Court in *DeJesus I*:

> DeJesus's counsel on appeal has filed a brief and a motion to withdraw pursuant to Rule 26(c). DeJesus's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, DeJesus's attorney informed him of the provisions of Rule 26(c) and provided DeJesus with a copy of the motion to withdraw and the accompanying brief. DeJesus also was informed of his right to supplement his attorney's presentation. DeJesus has raised two issues for this Court's consideration. The State has responded to the position taken by DeJesus's counsel, as well as the points raised by DeJesus, and has moved to affirm the Superior Court's judgment.

*DeJesus I* at *1. Thus DeJesus' claim is best understood as alleging ineffective assistance by his attorney in moving to withdraw rather than filing a brief on the merits. DeJesus' attorney's withdrawal under Rule 26(c) was proper. DeJesus was afforded all appellate rights entitled to him and his attorney did not err by filing a brief under Supreme Court Rule 26(c). *See Morgan v. Snyder*, Civ.Act.No. 95-330-LON (D.Del. January 30, 1996)(Exhibit E). DeJesus, obviously, is not entitled to relief on this claim.

Finally, DeJesus argues that his attorney was ineffective because he did not move to dismiss the indictment. Because DeJesus presented this claim to the Delaware Supreme Court in *DeJesus III*, it has been properly exhausted. DeJesus was arrested on March 9, 2003 and a preliminary hearing was held on March 17, 2003. (Superior Court

Criminal Docket #0303004601, at 1). At that hearing, the Court of Common Pleas found probable cause to believe DeJesus had committed three counts of possession of a deadly weapon during the commission of a felony, first degree burglary, and three counts of aggravated menacing. (Superior Court Criminal Docket #0303004601, at 1). In April 2003, the State obtained an indictment charging DeJesus with another count of possession of a deadly weapon during the commission of a felony and first degree unlawful imprisonment in addition to the original seven charges presented at his preliminary hearing. DeJesus argues that the indictment was invalid because it charged him with two more charges than he originally faced. DeJesus does not allege any deficiency on the face of the indictment. Superior Court found that the "additional charges meshed with the facts as shown by the evidence and as defined by the law." *DeJesus II* at *2. Moreover, there is no basis for DeJesus' assumption that he could only be prosecuted on the charges for which a complaint had been filed under Superior Court Criminal Rule 3. *See* 1 Fed. Prac. Criminal §41 (3d ed.). Accordingly, the court found no merit to DeJesus' related ineffectiveness claim. Because there was no error in DeJesus' indictment, his attorney was not ineffective when he failed to challenge it. *Williams v. Scott*, 1995 WL 313943 at *1 (C.A. 5th 1995)(Exhibit F). DeJesus, therefore, is not entitled to relief on this claim.

*Claim Two – Suggestive identification and witness coercion*

DeJesus argues that his rights under the Sixth Amendment were violated when Marisol Ayala's identification of DeJesus was obtained via an impermissibly suggestive method. DeJesus, however, offers no support for this claim. Rather, he appears to be

challenge the credibility of Ayala's testimony because she was threatened with imprisonment if she refused to testify against him.

To the extent that DeJesus raises the issue of an impermissibly suggestive identification, his claim must fail. He has never before raised this claim in state court and it is, therefore, unexhausted. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). DeJesus' claim is unexhausted. Because DeJesus did not raise an objection to the identification at trial, on direct appeal in *DeJesus I,* in his postconviction motion in *DeJesus II,* or the appeal therefrom in *DeJesus III*, he is barred from raising the issue in subsequent state court filings. *See* DEL. SUPER. CT. CRIM. R. 61(I)(2) and (3). DeJesus has not alleged any cause for failing to raise this claim in state court. DeJesus' identification claim is, therefore, excused from the exhaustion requirement, but procedurally defaulted. Because of his procedural default, DeJesus' claim, to the extent he complains that the identification is defective, must be rejected.

In turn, DeJesus offers no evidence to support his allegation of an impermissibly suggestive identification. Superior Court, in *DeJesus II*, described the circumstances of the identification: "Det. Campos put together six photos of men generally matching the description of the burglar, and showed them to Ms. Ayala and her older daughter. Both women readily identified the photo of Defendant as the man who burglarized their home." *DeJesus II* at *2. DeJesus provides no basis to conclude that the identification procedure followed by Campos was anything other than routine. Because DeJesus has failed to allege any error in this identification, his claim must fail.

10

The crux of DeJesus' argument, however, appears to be that Ayala's testimony should not have been trusted because she was compelled to testify against DeJesus under threat of incarceration. But the question of a witness' credibility is not subject to review in federal habeas. *See generally Jackson v. Virginia*, 443 U.S. 307, 319, 326 (1979). The circumstances underlying Ayala's compelled testimony were presented to the jury and the jury, apparently, chose to believe her. *DeJesus II* at *2. DeJesus' claim must, therefore, fail.

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of DeJesus' jury trial have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: January 22, 2007

Westlaw.

865 A.2d 521                                                                 Page 1

865 A.2d 521, 2005 WL 65865 (Del.Supr.)
**(Cite as: 865 A.2d 521)**

**H**
DeJesus v. StateDel.Supr.,2005.(The decision of the
Court is referenced in the Atlantic Reporter in a '
Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Christian DEJESUS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 213,2004.**

Submitted Oct. 14, 2004.
Decided Jan. 10, 2005.

**Background:** Defendant was convicted in the
Superior Court, New Castle County, of three counts
of aggravated menacing, four counts of possession
of a firearm during the commission of a felony, one
count of first degree burglary, and one count of first
degree unlawful imprisonment, and was sentenced
to 12 years' incarceration. Defendant appealed.

**Holdings:** The Supreme Court held that:

(1) trial court did not abuse its discretion when it
decided to go forward with trial without an
interpreter, and

(2) evidence was sufficient to support convictions,
despite conflicts in the testimony of two state
witnesses.

Affirmed.

**[1] Criminal Law 110 €══642**

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in
General
            110k642 k. Appointment and Services of
Interpreter. Most Cited Cases

Trial court did not abuse its discretion when it
decided to go forward with trial without an
interpreter, since defendant was only concerned that
the jury might not be able to understand his English
and he did not assert that he was unable to
understand the evidence presented against him or
unable to present particular testimony on his own
behalf.

**[2] Burglary 67 €══41(1)**

67 Burglary
    67II Prosecution
        67k40 Weight and Sufficiency of Evidence
            67k41 In General
                67k41(1) k. In General. Most Cited
Cases

**Extortion and Threats 165 €══32**

165 Extortion and Threats
    165II Threats
        165k32 k. Evidence. Most Cited Cases

**Kidnapping 231E €══36**

231E Kidnapping
    231Ek33 Evidence
        231Ek36 k. Weight and Sufficiency. Most
Cited Cases

**Weapons 406 €══17(4)**

406 Weapons
    406k17 Criminal Prosecutions
        406k17(4) k. Weight and Sufficiency of
Evidence. Most Cited Cases
Evidence was sufficient to support convictions for
aggravated menacing, possession of a firearm
during the commission of a felony, burglary, and
unlawful imprisonment, notwithstanding conflicts in
the testimony of two state witnesses.

Evidence was sufficient to support convictions for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

865 A.2d 521                                                                                          Page 2

865 A.2d 521, 2005 WL 65865 (Del.Supr.)
**(Cite as: 865 A.2d 521)**

aggravated menacing, possession of a firearm during the commission of a felony, burglary, and unlawful imprisonment, notwithstanding conflicts in the testimony of two state witnesses.

Evidence was sufficient to support convictions for aggravated menacing, possession of a firearm during the commission of a felony, burglary, and unlawful imprisonment, notwithstanding conflicts in the testimony of two state witnesses.

Evidence was sufficient to support convictions for aggravated menacing, possession of a firearm during the commission of a felony, burglary, and unlawful imprisonment, notwithstanding conflicts in the testimony of two state witnesses.

Court Below-Superior Court of the State of Delaware, in and for New Castle County, Cr.A. Nos. IN03-03-1089 thru -1095 and IN03-04-0614 and -0615, Cr. ID 0303004601.

Before HOLLAND, BERGER, and JACOBS, Justices.

### ORDER

*1 This 10th day of January, 2005, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) The defendant-appellant, Christian DeJesus, was convicted by a Superior Court jury of three counts of aggravated menacing, four counts of possession of a firearm during the commission of a felony, one count of first degree burglary, and one count of first degree unlawful imprisonment. The Superior Court sentenced DeJesus to twelve years at Level V incarceration followed by probation. This is DeJesus's direct appeal.

(2) DeJesus's counsel on appeal has filed a brief and a motion to withdraw pursuant to Rule 26(c). DeJesus's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter,

DeJesus's attorney informed him of the provisions of Rule 26(c) and provided DeJesus with a copy of the motion to withdraw and the accompanying brief. DeJesus also was informed of his right to supplement his attorney's presentation. DeJesus has raised two issues for this Court's consideration. The State has responded to the position taken by DeJesus's counsel, as well as the points raised by DeJesus, and has moved to affirm the Superior Court's judgment.

(3) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[FN1]

> FN1. *Penson v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

(4) DeJesus raises two points for the Court's consideration. First, he contends that the Superior Court erred by not providing him with a translator at trial. Second, DeJesus argues that testimony from two of the State's witnesses was conflicting and, therefore, not credible.

[1] (5) With respect to the first contention, the record reflects that DeJesus made a motion on the day of trial requesting the assistance of an interpreter. The Superior Court ruled that DeJesus understood and could communicate in English adequately in order to go forward without an interpreter. Nonetheless, the Court postponed the start of trial to see if an interpreter was available to assist. When no interpreter was available, the trial went forward as scheduled. The record reflects that DeJesus testified on the second day of trial and did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

865 A.2d 521                                                                                    Page 3

865 A.2d 521, 2005 WL 65865 (Del.Supr.)
**(Cite as: 865 A.2d 521)**

so without the assistance of an interpreter.

(6) The decision to use an interpreter is within the trial court's discretion. [FN2] In this case, the Superior Court found that DeJesus adequately understood and spoke English. Although DeJesus expressed a concern prior to testifying that the jury might not be able to understand his English, the transcript of his testimony underscores DeJesus's ability to speak and understand English. Indeed, DeJesus does not assert that he was unable to understand any evidence presented against him or that, without an interpreter, he was unable to present particular testimony on his own behalf. Accordingly, under these circumstances, we find no error or abuse of discretion in the Superior Court's decision to go forward without an interpreter.

> FN2. *Liu v. State,* 628 A.2d 1376, 1384 (Del.1993).

*2 [2] (7) DeJesus next asserts that the testimony of two of the State's witnesses was conflicting and, therefore, not credible. It is well-settled, however, that the jury is the sole fact-finder with responsibility for determining the witnesses' credibility, for resolving conflicts in the testimony, and for drawing any inferences from the proven facts.[FN3] The evidence presented at trial was sufficient to support the jury's verdict in this case. We therefore find no merit to DeJesus's second point.

> FN3. *Chao v. State,* 604 A.2d 1351, 1363 (Del.1992).

(8) This Court has reviewed the record carefully and has concluded that DeJesus's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that DeJesus's counsel has made a conscientious effort to examine the record and the law and has properly determined that DeJesus could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The

judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

Del.Supr.,2005.
DeJesus v. State
865 A.2d 521, 2005 WL 65865 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 2360680 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
State v. DejesusDel.Super.,2005.Only the Westlaw
citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
STATE of Delaware,
v.
Christian DEJESUS, Defendant.
**No. 0303004601.**

Submitted July 28, 2005.
Decided Sept. 27, 2005.

Defendant's Motion for Postconviction Relief.
Summarily Dismissed.

Christian DeJesus, pro se.

OPINION
BABIARZ, J.
*1 This is the Court's decision on Defendant
Christian DeJesus' motion for postconviction relief
filed pursuant to Super. Ct.Crim. R. 61 ("Rule 61").
As explained below, Defendant's alleged grounds
for relief have no basis in law or in fact, and his
motion is summarily dismissed.

Posture. A Superior Court jury found Defendant
guilty of one count of first degree burglary, one
count of first degree unlawful imprisonment, three
counts of aggravated menacing and four counts of
possession of a firearm during the commission of a
felony. This Court sentenced Defendant to 12 years
of imprisonment followed by probation, and the
Delaware Supreme Court affirmed. [FN1] Defendant
now seeks to have his convictions vacated and the
case against him dismissed, or at a minimum to
have a new trial.

> FN1. *DeJesus v. State,* 2005 WL 65865
> (Del.).

Issues. Defendant contends that most of the issues
he now raises were not previously raised because
defense counsel's representation was
constitutionally ineffective. Defendant asserts that
the police coerced the witnesses into testifying
against him to obscure the fact that his look-alike
brother committed the crimes, and that defense
counsel participated in the cover-up by not
interviewing the State's witnesses to find out what
really happened. He argues that the prosecutor
illegally added two charges to the indictment,
thereby divesting this Court of jurisdiction over his
case. He contends that defense counsel deprived
him of any chance of acquittal by choosing not to
cross-examine a six-year-old witness. He renews his
argument, which failed on direct appeal, that this
Court abused its discretion in denying his motion
for a translator. Finally, he condemns defense
counsel's representation on direct appeal.

Evidence adduced at trial. The State offered the
testimony of Marisol Ayala and her two daughters,
whose house Defendant barged into on Feb. 14,
2003. Ms. Ayala stated that she was sitting on her
porch at 116 Scott Street in Wilmington when a
man drove up in a big green car. He got out of the
car and asked Ms. Ayala for the whereabouts of a
man named "Moreno." When Ms. Ayala said that
Moreno was not in her house, he grabbed her by the
arm, pointed a gun at her head, and told her to open
the door to the house. By this time, Ms. Ayala was
crying and screaming. She opened the outside door
and knocked on the inside door, which her
five-year-old daughter had locked. When the little
girl unlocked the door, the intruder yanked it open,
grabbed the child, and held his gun to her head. He
threatened to kill the little girl if Ms. Ayala did not
tell him where Moreno was. The mother cried and
screamed, saying over and over that she did not
know where Moreno was. She begged the gunman
to leave her child alone.

Ms. Ayala's teen-aged daughter was in the kitchen
when she heard a ruckus in the other room. She

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 2

Not Reported in A.2d, 2005 WL 2360680 (Del.Super.)
(Cite as: Not Reported in A.2d)

came to the front room where she saw a man holding a gun to her younger sister's head. She ran from the house because she was pregnant and feared for her child. She saw the man drive away in a blue/green car.

**\*2** Detective Wilfredo Campos of the Wilmington Police Department also testified on the State's behalf. He stated that he interviewed Ms. Ayala and her older daughter shortly after the crimes took place. Both women were cooperative and described the events summarized above. Ms. Ayala told him that she thought the man's name was "Chris." Det. Campos testified that Ms. Ayala was cooperative at the outset of the investigation but that when he talked with her just prior to trial she cried and stated that she was scared of the defendant.

On March 6, 2003, Det. Campos stopped a car that fit the description provided by the victims. The driver was Christian DeJesus, and the car was a 1999 Chrysler New Yorker. When Defendant's room was subsequently searched, the police found ammunition for a 9-millimeter firearm and a .38-caliber firearm, as well as a Pep Boys receipt referring to a 1999 Chrysler New Yorker with the same PA tag number as Defendant's car and made out to Christian DeJesus.

Det. Campos put together six photos of men generally matching the description of the burglar, and showed them to Ms. Ayala and her older daughter. Both women readily identified the photo of Defendant as the man who burglarized their home.

Defendant took the stand and testified that he and his brother had rented a room in a house they shared with a number of other people. He stated that the padlock on the door to their room was to prevent other people from entering the room in their absence, but that the ammunition found in the ceiling did not belong to him. He also testified that he approached Ms. Ayala's older daughter in the street one day and asked her why she had said he was the person who had barged into her home. He stated that he did not commit the charged crimes.

Discussion. Defendant asserts that the prosecutor

illegally changed the indictment by adding one count of unlawful imprisonment and an additional weapons charge, and that defense counsel was ineffective for not moving to dismiss on these grounds. The State has broad although not unlimited discretion to prosecute as it sees fit.[FN2] The additional charges meshed with the facts as shown by the evidence and as defined by the law. The prosecutor did not abuse her discretion in bringing the additional charges. It follows that there is no merit to Defendant's related argument that defense counsel should have moved to dismiss because the allegedly illegal indictment divested this Court of jurisdiction. Defendant has not shown either that counsel's conduct below a reasonable standard or that he was prejudiced by counsel's representation, as required by *Strickland v. Washington*.[FN3]

> FN2. *Albury v. State,* 551 A.2d 53, 61 (Del.1988) (citing *Wayte v. United States,* 470 U.S. 598, 607 (1985) (stating that as long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether to prosecute and what to charge generally rests in his discretion)).

> FN3. 466 U.S. 668, 688, 694 (1984).

Defendant alleges that Det. Campos coerced the witnesses into falsely testifying against him, and that defense counsel was ineffective for failing to bring this fact to light. He argues that Ms. Ayala's letters of recantation were truthful whereas her trial testimony was not. On cross-examination, Ms. Ayala stated that prior to trial she had written two letters proclaiming Defendant's innocence. Defense counsel also elicited the fact that Det. Campos had told Ms. Ayala that she would be jailed if she did not testify against Defendant. Thus the record eviscerates Defendant's claim that defense counsel was unaware of the facts surrounding Ms. Ayala's contradictory statements. The jury heard both versions of Ms. Ayala's recitation of the events, and chose to believe what she had initially told Det. Campos and what she testified to at trial, that is, that Defendant was the person who barged into her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                           Page 3

Not Reported in A.2d, 2005 WL 2360680 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

home and threatened both her daughter and herself with a gun. The jury is the finder of fact,[FN4] and the jury has spoken.

> FN4. *Chao v. State,* 604 A.2d 1351, 1363 (Del.1992).

**\*3** Defendant also asserts that his brother committed the crimes for which he has been convicted, and that defense counsel would have discovered this if he had conducted an adequate investigation. Having heard the Defendant testify at trial, the Court has difficulty treating this claim as anything but a highly optimistic afterthought. Defendant spoke from the stand about the room he and his brother had rented together, the padlock they put on the door to their room, and the car he occasionally let his brother drive. He never stated that his brother committed the crimes or that he and brother could be mistaken for each other, although he had ample opportunity to so testify. Nor did Defendant make this claim on direct appeal, although he raised two other arguments. This assertion defies common sense and does not constitute a viable claim of ineffective assistance of counsel.

Defendant also argues that defense counsel was ineffective for failing to cross examine Ms. Ayala's younger daughter, who was six years old at the time of trial. Defendant also asserts that the child's direct testimony exonerated him, which is flatly untrue. Furthermore, the decision not to cross examine a child witness falls within the broad range of strategic choices that will not be dissected without a showing of prejudice,[FN5] which Defendant has not made.

> FN5. *Stiickland v. Washington, supra.*

Defendant argues that this Court erred by not provided him with a translator at trial. This issue was resolved against him on direct appeal, and is therefore barred by Rule 61(I)(4), unless warranted in the interest of justice. Defendant has not triggered this exception, which requires a showing that subsequent legal developments have revealed

that this Court lacked authority to convict or punish him.[FN6] This issue is barred from reconsideration.

> FN6. *Flamer v. State,* 585 A.2d 736, 746 (Del.1994).

Conclusion. For the reasons stated herein, Defendant's motion for postconviction relief is summarily dismissed.

It Is So ORDERED.

Del.Super.,2005.
State v. Dejesus
Not Reported in A.2d, 2005 WL 2360680 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

906 A.2d 806                                                        Page 1

906 A.2d 806, 2006 WL 1506205 (Del.Supr.)
**(Cite as: 906 A.2d 806)**


**H**
Briefs and Other Related Documents
DeJesus v. StateDel.Supr.,2006.(The decision of the
Court is referenced in the Atlantic Reporter in a '
Table of Decisions Without Published Opinions.')
            Supreme Court of Delaware.
    Christian DEJESUS, Defendant Below-Appellant,
                        v.
    STATE of Delaware, Plaintiff Below-Appellee.
                **No. 499,2005.**


            Submitted: March 24, 2006.
            Decided: May 30, 2006.


Court Below-Superior Court of the State of
Delaware in and for New Castle County, Cr. ID No.
0303004601.

Before STEELE, Chief Justice, HOLLAND and
RIDGELY, Justices.

                    *ORDER*
STEELE, Chief Justice.
*1 This 30th day of May 2006, upon consideration
of the briefs of the parties, it appears to the Court
that the judgment of the Superior Court should be
affirmed on the basis of and for the reasons set forth
in its decision dated September 27, 2005.

NOW, THEREFORE, IT IS ORDERED that the
judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
DeJesus v. State
906 A.2d 806, 2006 WL 1506205 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 460195 (Appellate Brief) State's
Answering Brief (Jan. 20, 2006) Original Image of
this Document with Appendix (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Elliott v. KearneyD.Del.,2004.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Curtis ELLIOTT, Petitioner,
v.
Rick KEARNEY, Warden, Respondent.
**No. Civ.A. 02-205-KAJ.**

March 31, 2004.

Curtis Elliott, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

**\*1** Petitioner Curtis Elliott is presently incarcerated
at the Delaware Correctional Facility ("D.C.C.") in
Smyrna, Delaware. On March 18, 2002, Elliott filed
an application for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254, acting *pro se.* (D.I.1.) He has
also filed a letter motion for the appointment of
counsel and DNA testing, a motion for summary
judgment, and a motion for issuance of the writ
pursuant to 28 U.S.C. § 2243. (D.I. 37; D.I. 47; D.I.
55.) For the reasons set forth below, the Court will
deny Elliott's petition. (D.I.1.) The Court will also
deny his motions as moot. (D.I. 37; D.I. 47; D.I. 55.)

II. PROCEDURAL AND FACTUAL
BACKGROUND

On April 13, 2000, Elliott attacked Desiderio S.
Perez with a knife. Consequently, Elliott was
charged by information in the Delaware Superior
Court with four offenses: possession of a deadly
weapon during the commission of a felony, second

degree assault, possession of a deadly weapon by a
person prohibited, and misdemeanor theft. On
October 26, 2000, Elliott, represented by counsel,
pled guilty to second degree assault. In return, the
State entered a *nolle prosequi* as to the remaining
three charges.

On December 8, 2000, the Delaware Superior Court
sentenced Elliott to eight years incarceration,
suspended after four years for decreasing levels of
probation. Elliott did not file a direct appeal. *See
Elliott v. State,* No. 270, 2001, Order at ¶ 3 (Del.
Aug. 23, 2001).

On April 17, 2001, Elliott filed his first motion for
state post-conviction relief pursuant to Superior
Court Criminal Rule 61, alleging ineffective
assistance of counsel. (D.I. 13, Ex. G to State's
Motion to Affirm in No. 270, 2001.) The Superior
Court denied the motion on April 27, 2002. Elliott
never appealed. (D.I. 13, Ex. H to State's Motion to
Affirm in No. 270, 2001.)

In May 2001, Elliott filed a second Rule 61 motion.
(D.I. 13, Exs. I and J to State's Motion to Affirm in
No. 270,2001.) The Superior Court denied the
motion, and the Delaware Supreme Court affirmed
this decision on appeal. *See Elliott v. State,* No.
270,2001 (Del. Aug. 23, 2001); (D.I. 13, Ex. A to
State's Motion to Affirm in No. 270,2001.)

The Delaware Superior Court denied Elliott's third
Rule 61 motion. This decision was affirmed on
appeal. *Elliott v. State,* No. 554, 2001 (Del. Feb. 4,
2002).

Currently before the Court is Elliott's petition for
the federal writ of habeas corpus.

III. LEGAL PRINCIPLES GOVERNING
EXHAUSTION AND PROCEDURAL DEFAULT

A federal district court may consider a habeas

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 2

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When seeking habeas relief from a federal court, a state petitioner must first exhaust remedies available in the state courts. According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

*2 (A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). However, a state can expressly waive the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(3).

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). However, if the petitioner raised the issue on direct appeal in the correct procedural manner, then the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1996); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992) (citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines,* 208 F.3d at 160; *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane,* 489 U.S.

288, 297-98 (1989). Although deemed exhausted, such claims are still considered to be procedurally defaulted. *Lines,* 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255 263 (1989); *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1999); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

*3 Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir.2002).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### IV. DISCUSSION

Elliott filed his habeas petition and supporting memorandum on March 18, 2002. [FN1] (D.I. 1; D.I.2.) He contends that his defense attorney provided ineffective assistance of counsel by failing to conduct DNA testing on the "alleged deadly weapon." (D.I. 1 at 5.) The State properly acknowledges that Elliott exhausted state remedies by presenting this argument to the Delaware Supreme Court in second and third post-conviction appeals. *See* Op. Br. In No. 270, 2002 at 10; *Smith v. Digmon,* 434 U.S. 332, 333 (1978); *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

> FN1. Since then, Elliott has filed numerous documents in support of his petition, either titled as traverses, memoranda in support, or even an amended petition. (D.I.29; D.I. 35; D.I. 38; D.I. 39; D.I. 41; D.I. 44). To the extent these documents merely support and expand the original ineffective assistance of counsel claim, the Court will consider them in its review.

A finding of exhaustion does not end the Court's inquiry, however, because a federal habeas court " must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer,* 864 F.2d 306, 310 (3d Cir.1989). Here, the State asks the Court to dismiss Elliott's petition as procedurally barred by the independent and adequate state law ground of Delaware Superior Court Criminal Rule 61(i)(2). (D.I. 10 at 2-4.)

The procedural default issue arises because Elliott did not raise his current ineffective assistance/DNA argument [FN2] in his first post-conviction motion. Instead, Elliott's first post-conviction motion alleged that his defense counsel provided ineffective assistance of counsel by not raising the issue of a conflict of interest between Elliott and the judge. (D.I. 13, Ex. G & Ex. H to the State's Motion to Affirm in No. 270,2001.) On April 27, 2001, the Superior Court denied this claim on the merits. (D.I.

13, Ex. H to the State's Motion to Affirm in No. 270,2001.)

> FN2. For ease of discussion, the Court will refer to Elliott's present ineffective assistance claim in this manner.

When Elliott did raise his ineffective assistance/DNA argument in his second post-conviction motion, the Superior Court denied the claim as procedurally barred under Rule 61(i)(2) . Specifically, Elliott's failure to raise the issue in the first post-conviction motion barred him from raising it in his second post-conviction motion.[FN3] (D.I.13, Ex. A.) On appeal, the Delaware Supreme Court affirmed this decision, stating that "[t]o the extent Elliott's motion included claims that were not made in his previous postconviction motion, the motion was procedurally barred as repetitive [under Super. Ct.Crim. R. 61(i)(2) ]." *Elliott v. State,* No.270, 2001, Order at ¶ 4 & n. 5 (Del. Aug. 23, 2001).

> FN3. The Superior Court also concluded that Elliott's claim did not satisfy the " interest of justice" exception to procedural default. (D.I. 13, Ex. A to State's Motion to Affirm in No. 270,2001.)

*4 By applying the procedural bar of Rule 61, the Delaware Supreme Court articulated a "plain statement," under *Harris v. Reed,* 489 U.S. 255, 263-64 (1989), that its decision rested on state law grounds. *See Ylst v. Nunnemaker,* 501 U.S. 797 (1991). This Court has repeatedly held that Rule 61(i)(2) constitutes an independent and adequate state procedural rule precluding federal habeas review. *Kirk v. Carroll,* 243 F.Supp.2d 125, 145 (D.Del.2003); *Maxion v. Snyder,* 2001 WL 848601, at *12 (D.Del. July 27, 2001); *Carter v. Neal,* 910 F.Supp. 143, 149-50 (D.Del.1995). As such, federal habeas review of this claim is precluded unless Elliott establishes cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will result if the Court refuses to hear this claim. *See* 28 U.S.C. § 2254(a); *Coleman v.. Thompson,* 501 U.S. 722, 750 (1991); *Caswell v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

*Ryan,* 953 F.2d 853, 860-61 (3d Cir.1992).

Elliott alleges that, during the plea colloquy, the Delaware Superior Court and his attorney told him he could not appeal his guilty plea. He contends that this information prevented him from including the ineffective assistance/DNA argument in his first post-conviction motion.[FN4] (D.I.29.) In effect, Elliott is asserting that his counsel's statement and the Superior Court's statement regarding his right to appeal were an external factor constituting cause for his procedural default. However, Elliott has failed to demonstrate how this statement regarding an appeal prevented him from raising the ineffective assistance/DNA argument in his first post-conviction motion.

> FN4. To the extent Elliott argues that these statements constitute cause for his failure to raise this claim on appeal, the argument fails. In Delaware, ineffective assistance of counsel claims should not first be brought on direct appeal, but rather, in a Rule 61 motion for post-conviction relief. *Williams v. State,* 682 A.2d 627, at * *3 (Del.1996) (collecting cases). Any information regarding his right to appeal had no effect on his ability to bring a Rule 61 motion.

His contention is even more puzzling because the statement regarding his right to appeal obviously did not prevent him from filing the post-conviction motion in the first place. Moreover, despite his repetitive assertions that he is not a lawyer and does not understand the law, a lack of legal knowledge does not constitute cause for procedural default.[FN5] *See Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) ("cause cannot be based on the mere inadvertence of the petitioner ... to take an appeal"); *Desmond v. Snyder,* 1999 WL 33220036, at *19 (D.Del. Nov. 16, 1999).

> FN5. To the extent Elliott is alleging his counsel's ineffective assistance as cause for his failure to raise the issue in his first post-conviction motion, this contention fails. Ineffective assistance of counsel can

only constitute cause for a procedural default if it rises to the level of a Sixth Amendment violation. *See Murray v. Carrier,* 477 U.S. at 488. Elliott had no right to representation during his post-conviction proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). His counsel's alleged failure to inform him of his right to raise issues in a Rule 61 motion therefore cannot establish cause for his procedural default. *Coleman,* 501 U.S. at 152; *Cristin,* 281 F.3d at 420.

Further, Elliott has not demonstrated actual prejudice resulting from his attorney's failure to provide DNA testing.[FN6] He argues that prejudice is shown by the fact that he would not have pled guilty if his attorney had done the DNA testing because such testing would have established his innocence. *See generally Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (in a guilty plea context, petitioner must demonstrate how the errors of counsel undermined his decision to plead guilty). However, this conclusory statement does not demonstrate actual prejudice. "Mere allegations by a defendant that he would have ple[d] differently and insisted on going to trial are insufficient to establish prejudice." *Werts v. Vaughn,* 228 F.3d at 193; *Thomas v. Snyder,* 2001 WL 1297812, at *4 (D.Del. Oct. 3, 2001).

> FN6. Upon finding that Elliott has not established cause for his procedural default, the Court need not reach the question of whether he has shown any actual prejudice. *See Coleman,* 501 U.S. at 752, 757; *Smith v. Murray,* 477 U.S. 527, 533 (1986). However, because Elliott has submitted numerous documents addressing the procedural default issue, the Court will address the prejudice issue.

*5 Moreover, the fact that Elliott derived substantial benefits from pleading guilty increases his burden in establishing prejudice. In exchange for his plea, the State dropped three charges: possession of a deadly weapon during the commission of a felony, possession of a deadly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

weapon by a person prohibited, and misdemeanor theft. If a jury convicted Elliott of these charges, he would have faced a jail term significantly greater than his eight year sentence.

Finally, to the extent Elliott argues that his attorney's failure to provide DNA testing prejudiced him because he entered his plea involuntarily, this argument fails. Elliott himself acknowledges that he knew prior to accepting the plea that his counsel had not conducted DNA testing on the weapon. However, he still decided to plead guilty. The Superior Court engaged in a thorough plea colloquy, affording Elliott numerous occasions to reject the plea agreement. If, as Elliott now claims, he was dissatisfied with his attorney's failure to provide DNA testing, he could have mentioned this fact at the plea colloquy. Yet, Elliott told the Superior Court that he was satisfied with his legal representation. (D.I. 13, Ex. F at 6 to State's Motion to Affirm in No. 270,2001.) Elliott is bound by these statements made under oath in open court. *See Blackledge v. Allison,* 431 U.S. 63, 73-4 (1997); *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir.1991).

The only other way for the Court to excuse Elliott's procedural default is under the "miscarriage of justice exception." Pursuant to this exception, a court may excuse a procedural default if the petitioner demonstrates actual innocence. *See Murray,* 477 U.S. at 496. However, the " miscarriage of justice" exception applies only in " extraordinary cases." *See Coleman,* 501 U.S. at 749.

As explained above, the record demonstrates that Elliott knowingly and voluntarily entered his guilty plea. Indeed, Elliott specifically stated that he did, in fact, assault the victim with a knife. (D.I. 13, Ex. F at 5 to State's Motion to Affirm in No. 270,2001.) This "[s]olemn declaration in open court carr[ies] a strong presumption of verity" which is not overcome by Elliott's unsubstantiated claims of actual innocence. *Blackledge,* 431 U.S. at 73-74. As such, his assertions fail to demonstrate that the Court's refusal to review this claim will result in a fundamental miscarriage of justice.

In short, the Court concludes that Elliott has failed

to provide a reason excusing his procedural default. Accordingly, his federal habeas petition will be dismissed as procedurally barred.

### V. MOTIONS

In addition to his habeas petition, Elliott has filed three motions: a letter motion for the appointment of counsel and DNA testing, a motion for summary judgment, and a motion for issuance of the writ pursuant to 28 U.S.C. § 2243. (D.I. 37; D.I. 47; D.I. 55.)

It is well settled that a petitioner does not have a Sixth Amendment right to counsel in a habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). However, a district court may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c), 28 U.S.C. *foll.* § 2254. As explained above, the Court is dismissing Petitioner's § 2254 petition. In these circumstances, the " interests of justice" do not require the appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). Thus, the Court will deny this motion, and his concurrent request for DNA testing, as moot.

**\*6** Similarly, because the Court has reviewed Elliott's habeas petition and has concluded that federal habeas review is procedurally barred, the Court will deny Elliott's motions for summary judgment and for issuance of the writ under 28 U.S.C. § 2243 as moot.

### VI. CERTIFICATE OF APPEALABILITY

Finally, this Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a " substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner establishes a "substantial showing" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

U.S. 473, 484 (2000).

Additionally, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Court concludes that Elliott's claims are procedurally barred. Reasonable jurists would not find this conclusion unreasonable. Consequently, Elliott has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### VII. CONCLUSION

For the foregoing reasons, the Court will deny Elliott's § 2254 petition, and finds no basis for the issuance of a certificate of appealabilty. An appropriate order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:
1. Curtis Ellliot's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.1.) is DENIED.
2. Curtis Elliott's motion for the appointment of counsel and DNA testing is DENIED as moot. (D.I.37.)
3. Curtis Elliott's motion for summary judgment is DENIED as moot. (D.I.47.)
4. Curtis Elliott's motion for issuance of the writ under 28 U.S .C. § 2243 is DENIED as moot.

(D.I.55.)
5. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

D.Del.,2004.
Elliott v. Kearney
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMAS A. MORGAN,                    )
                                     )
                Petitioner,          )    Civil Action No. 95-330-LON
                                     )
        v.                           )
                                     )
                                     )
ROBERT SNYDER, et al.,               )
                                     )
                Respondents.         )    O R D E R

 

     1.  In August of 1993, a jury in the Superior Court of Delaware convicted Petitioner of two counts of first degree unlawful sexual intercourse, one count of second degree kidnapping, and one count of second degree unlawful sexual contact.  Petitioner was sentenced to a total of 32 years imprisonment, to be followed by 4 years work release and probation.  On direct appeal, petitioner's convictions were affirmed under Delaware Supreme Court Rule 26(c). <u>Morgan v. State</u>, No. 386, 1993 (Del. May 5, 1994).  The Delaware Supreme Court found that petitioner's counsel "made a conscientious effort to examine the record and properly determined that Morgan could not raise a meritorious claim on direct appeal." <u>Id.</u> at 3.

     2.  In November of 1994, petitioner moved for state post-conviction relief.  In that motion, petitioner raised five grounds for relief: (1) his attorney's refusal to allow him to

1

testify; (2) illegally obtained evidence; (3) insufficient
evidence; (4) ineffective assistance of counsel; and (5)
counsel's withholding of exculpatory evidence.

3. On November 14, 1994, the Superior Court denied
petitioner's application for post conviction relief. Petitioner
appealed to the Delaware Supreme Court.

4. On February 9, 1995, the Delaware Supreme Court
granted the State's motion to affirm the denial of post
conviction relief. In its Order, the Delaware Supreme Court
stated, "Morgan has raised only one issue in his opening brief on
appeal. Morgan contends that he was denied the effective
assistance of counsel in his direct appeal because his attorney
failed to raise any arguable issues for this Court's review."
Morgan v. State, No. 473, 1994, at *2 (Feb. 9, 1995). The court
ruled that its "previous finding that the record on Morgan's
direct appeal was totally devoid of any arguable issues
forecloses Morgan's present contention that he was denied
effective assistance of counsel on direct appeal."

5. Petitioner applied to this court for habeas relief
on May 26, 1995. His application raises three grounds for
relief. First, petitioner argues that he was denied the right to
direct appeal by his counsel's failure to file an appeal in his
behalf. Second, petitioner contends that his counsel failed to
meet his constitutional obligations under Delaware Supreme Court
Rule 26(c). Third, petitioner alleges ineffective assistance of
counsel based on his attorney's failure "to call proper witnesses

2

and expose the lies that the State produced at trial." (Docket Item "D.I." 2 at 5).

6.    Petitioner's first ground for relief is based on a faulty premise.  A direct appeal to the Delaware Supreme Court was docketed on petitioner's behalf in accordance with Delaware Supreme Court Rule 26(a)(ii).  On that appeal, the Delaware Supreme Court granted the State's motion to affirm the judgment of the Superior Court.  Therefore, petitioner was not denied the right to direct appeal.

7.    Petitioner contends that his counsel failed to follow the procedures outlined in Delaware Supreme Court Rule 26 in the course of that direct appeal.  This court may review an application for a writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).  The issue is not whether petitioner's counsel violated Rule 26.  The issue is whether petitioner's counsel violated the Constitution of the United States.

8.    Delaware Supreme Court Rule 26 is based on the Supreme Court's decision in <u>Anders v. California</u>, 386 U.S. 738 (1967).  In that case the court set forth the process that is due to a convicted prisoner when the convict's attorney finds that the appeal of his client's criminal conviction is frivolous:

> [The attorney's] role as advocate requires that he support his client's appeal to the best of his ability.  Of course, if counsel finds his appeal to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request

3

permission to withdraw.  That request must,
however, be accompanied by a brief referring
to anything in the record that might arguably
support the appeal.  A copy of counsel's
brief should be furnished to the indigent and
time allowed him to raise any points that he
chooses; the court -- not counsel -- then
proceeds, after a full examination of all the
proceedings, to decide whether the case is
wholly frivolous.

Anders v. California, 386 U.S. 738, 744 (1967).

9.  Petitioner's attorney followed this procedure.  He
made a conscientious examination of the record and found no non-
frivolous appellate issues.  He advised his client, the
petitioner, of that finding.  The petitioner was given the
opportunity to respond, and did respond by requesting a new
attorney to represent him on appeal.  Petitioner told the
Delaware Supreme Court that he had appealable issues but did not
specify what they were.  The court then conducted "an independent
review of the record" which revealed that the record was "totally
devoid of arguably appealable issues." Morgan v. State, No. 386,
1993, at *3 (Del. May 5, 1994).  This procedure precisely
mirrored Anders, so there has been no deprivation of petitioner's
Sixth Amendment right to counsel on appeal.

10.  Petitioner also alleges ineffective assistance of
counsel based on his attorney's conduct at trial, specifically
his failure "to call proper witnesses and expose the lies that
the State produced at trial."  Respondents contend that this
ground for relief has not been fairly presented to the Delaware
Supreme Court because Petitioner did not raise this ground for
relief in his brief to the Delaware Supreme Court.  The Delaware

4

Supreme Court, in its opinion of February 9, 1995, noted that
petitioner "raised only one issue in his opening brief on
appeal." That issue was the ineffective assistance of counsel on
appeal, not at trial.

      11.  In order for petitioner to have exhausted his
state remedies, he must have "fairly presented" the trial
ineffectiveness issue to the state's highest court. <u>Picard v.
Conner</u>, 404 U.S. 270, 275 (1971). Initially, this court must
decide whether the alleged ineffectiveness of counsel on appeal
is substantially equivalent to the alleged ineffectiveness of
counsel at trial. In order for the claims to be substantially
equivalent, both the legal theory and the facts of the claims
must be essentially the same. <u>Gibson v. Scheidemantel</u>, 805 F.2d
135, 138 (3d Cir. 1986). The legal theory of the two claims is
identical: ineffective assistance of counsel. The facts,
however, are different. In the exhausted claim, the relevant
facts are the actions taken by counsel in reviewing the record
and asserting appealable issues. In the claim now at issue, the
relevant facts relate to the importance of the witnesses not
called and whether a reasonable lawyer would have called them.
Because the facts of the claim asserted in federal court are
substantially different than the facts supporting the claim
presented to the Delaware Supreme Court, the two claims are not
substantially equivalent.

      12.  While petitioner addressed his counsel's
ineffectiveness at trial in his motion for post-conviction relief

5

in the Superior Court, petitioner did not brief that issue on appeal to the Delaware Supreme Court. According to Delaware law, this constitutes a waiver of the issue on appeal. Turnbull for Turnbull v. Fink, 644 A.2d 1322, 1324 (Del. 1994); Murphy v. State, 632 A.2d 1150, 1152 (Del. 1993). Therefore, petitioner did not fairly present the issue to the state's highest court. It follows that petitioner did not exhaust his state remedies. Cf. McGuire v. Estelle, 902 F.2d 749 (9th Cir. 1990), rev'd on other grounds, 502 U.S. 62 (1991) (finding exhaustion because California law provides that claim decided below but not asserted in petition to state supreme court is not waived).

13. Petitioner did raise the issue of ineffectiveness of his counsel at trial in his petition for post conviction relief in the Superior Court. He did not address that issue on appeal to the Delaware Supreme Court. The issue becomes, therefore, whether petitioner would be procedurally barred from bringing that claim again in state court. This court will not require petitioner to take his ineffectiveness claim back to state court if to do so would be futile. Yet, because no Delaware court has concluded that petitioner is procedurally barred from raising his ineffectiveness claim in state court, this court would dismiss the case without prejudice to allow petitioner to pursue his state remedies on that issue unless state law "clearly require[s] a finding of default." Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).

6

14.  It is clear that Delaware law bars petitioner from relitigating his ineffectiveness claim in state court. Petitioner may not raise again his counsel's ineffectiveness at trial because he addressed it in his motion for post-conviction relief in the Superior court. See Flamer v. State, 585 A.2d 736, 746 (Del. 1990).  "A postconviction relief claim which has been adjudicated is thereafter barred." State v. Gattis, 1995 WL 562254, at *17 (Del. Super. Aug. 24, 1995).  An exception exists if reconsideration would be in the "interest of justice." Del.Super.Ct.Crim.R. 61(i)(4).  In order to obtain relief under this exception, petitioner must show that "the trial court lacked the authority to convict or punish him." Flamer v. State, 585 A.2d 736, 746 (Del. 1990).  Petitioner does not allege any such jurisdictional defect.  Therefore, petitioner's claim of ineffective assistance of counsel is procedurally barred by Delaware law.

15.  Because the state court would refuse to consider the ineffectiveness claim on procedural grounds, this court must determine "whether cause and prejudice existed for [the] procedural default or whether failure to consider [the] claims would 'result in a fundamental miscarriage of justice.'" Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  The relevant questions are (1) why petitioner failed to raise the ineffectiveness of trial counsel to the Delaware Supreme Court, (2) whether that failure has prejudiced his claim, and (3) whether this court's failure to

7

hear the claim of ineffectiveness of counsel at trial would cause a fundamental miscarriage of justice.

16. For petitioner to show adequate cause, he must demonstrate that "some objective factor external to the defense" impeded petitioner's efforts to fairly present the issue to the Delaware Supreme Court. McCleskey v. Zant, 499 U.S. 467, 493 (1991). Petitioner wrote that his "illiteracy caused him not to assert this argument in the lower courts . . . ." (D.I. 10 at 7). Illiteracy is not an objective factor that is external to petitioner. Petitioner obtained help with his petition for post conviction relief and his appeal from the denial of that petition. (D.I. 10 at 7). Petitioner chose to focus his appeal on a single issue. Nothing external to petitioner frustrated his ability to assert his trial counsel's alleged ineffectiveness at trial.

17. A showing of prejudice requires petitioner to demonstrate "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Petitioner complains of his attorney's failure to call witnesses. Yet, petitioner has identified neither who was not called nor how the failure to call them infected his trial with constitutional error.

18.  For Petitioner's claims to fall within the "fundamental miscarriage of justice" exception for the procedural default rule, Petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Carrier</u>, 477 U.S. at 496.  Petitioner must show that it is more likely than not that no reasonable juror would have found the Petitioner guilty. <u>Schlup v. Delo</u>, 115 S.Ct. 851, 867 (1995).  <u>See also</u> <u>Hull v. Freeman</u>, 991 F.2d 86, 91 n. 3 (3rd Cir. 1993) (fundamental miscarriage of justice exception to procedural default rule is concerned with actual as compared to legal innocence).  Petitioner does claim that he is innocent. However, Petitioner has not shown that he actually is innocent. Because petitioner has not identified the witnesses who could demonstrate his innocence, petitioner has not shown that if those witnesses had been called, he probably would have been found not guilty.

19.  Therefore, plaintiff has procedurally defaulted on his claim of ineffectiveness of counsel at trial and has not shown cause and prejudice or a fundamental miscarriage of justice.  Therefore, this court will not entertain the ineffectiveness of trial counsel claim.

NOW, THEREFORE, IT IS ORDERED that:

1.  The petition for habeas corpus in this matter is denied and dismissed with prejudice.

2.  No probable cause exists for appeal.


_____ 1/30/96 _____         Joseph J. Longobardi, D.J.

10

Westlaw.

55 F.3d 632                                                                                    Page 1

55 F.3d 632, 1995 WL 313943 (C.A.5 (Tex.))
**(Cite as: 55 F.3d 632)**

**c**
Briefs and Other Related Documents
Williams v. ScottC.A.5 (Tex.),1995.This case was
not selected for publication in the Federal
Reporter.Please use FIND to look at the applicable
circuit court rule before citing this opinion. Fifth
Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)
United States Court of Appeals,Fifth Circuit.
Elliott WILLIAMS, Petitioner-Appellant,
v.
Wayne SCOTT, Director, Texas Department of
Criminal Justice, Institutional Division, et al.,
Respondents-Appellees.
No. 94-50462
Summary Calendar.

May 3, 1995.

Appeal from the United States District Court for the
Western District of Texas (A-91-CA509).

Before SMITH, EMILIO M. GARZA, and
PARKER, Circuit Judges.
PER CURIAM: [FN*]

>        FN* Local Rule 47.5.1 provides: "The
>        publication of opinions that have no
>        precedential value and merely decide
>        particular cases on the basis of well-settled
>        principles of law imposes needless expense
>        on the public and burdens on the legal
>        profession." Pursuant to that rule, the court
>        has determined that this opinion should not
>        be published.

*1 Elliott Williams appeals the denial of his state
prisoner's petition for writ of habeas corpus filed
pursuant to 28 U.S.C. § 2254. Finding no error, we
affirm.

I.

On April 11, 1988, Williams pleaded guilty to three

separate indictments charging him with aggravated
robbery and to a fourth indictment charging him
with escape from a penal institution. The Texas trial
court sentenced him to 60 years' imprisonment on
the robbery charges and to 10 years' imprisonment
on the escape charge. On August 7, 1991, Williams
petitioned the federal district court for writ of
habeas corpus. The court granted Williams's
petition as to the three robbery convictions based
upon defects in the indictments. We reversed and
dismissed the petition. *McKay v. Collins,* 12 F.3d
66, 70 (5th Cir.), *cert. denied,* 513 U.S. 854, 115
S.Ct. 157, 130 L.Ed.2d 95 (1994). We determined
that the state courts' implicit findings that the
indictments were not defective precluded federal
habeas review of a challenge to their sufficiency.

On petition for rehearing, we remanded for the
limited purpose of addressing Williams's claim that
he had received ineffective assistance of counsel an
issue that Williams had raised in his § 2254 petition
and which the district court did not address after
determining that the indictments were defective.
*Williams v. Collins,* 12 F.3d 70 (5th Cir.1994). On
June 16, 1994, the district court determined that
Williams had not established an ineffectiveness
claim and denied his petition.

c

II.

Although we remanded for a determination on what
we stated was the one remaining issue, Williams
actually had raised three interlinked issues in his
original § 2254 petition: (1) defective indictments;
(2) ineffective assistance of counsel; and (3)
voluntariness of the guilty pleas. On remand, the
district court combined the two remaining issues
and held that Williams did not receive ineffective
assistance of counsel, because his guilty pleas were
voluntary.[FN1] In effect, the court determined that,
because this court had ruled that the indictments
were not invalid, there was no valid ineffectiveness
claim, as that claim was premised on counsel's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 F.3d 632                                                                                           Page 2

55 F.3d 632, 1995 WL 313943 (C.A.5 (Tex.))
(Cite as: 55 F.3d 632)

failure to challenge the indictments. Because counsel was not ineffective, the plea, based upon counsel's advice and decision not to challenge the indictments, was not involuntary. Williams essentially argues the two issues separately on appeal.

> FN1. In his response to the state's motion for summary judgment on his original § 2254 petition, Williams argued that his guilty pleas were not knowing and voluntary because of his attorney's failure to object to the robbery indictments. In this appeal, his argument differs in that he contends that his pleas were involuntary because of the indictments' deficiencies.

### III.

Williams contends that he received ineffective assistance because his attorney did not file a motion to quash the robbery indictments and because he allowed Williams to plead guilty even though the indictments did not include the element that a defendant "intentionally or knowingly" threaten another person in order to be found guilty of aggravated robbery. To prevail on a claim of ineffective assistance, Williams must show (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In evaluating such claims, we indulged in "a strong presumption" that counsel's representation fell " within the wide range of reasonable professional competence." *Bridge v. Lynaugh,* 838 F.2d 770, 773 (5th Cir.1988). A failure to establish either deficient performance or prejudice defeats the claim. *Washington,* 466 U.S. at 697.

In ruling that Williams failed to satisfy the requirements of *Washington,* the district court determined that he did not establish the required prejudice because the record showed that his plea was knowing and voluntary. Williams must demonstrate prejudice by showing that counsel's errors were so serious that they rendered the

proceedings unfair or the result unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *see Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994), *cert. denied,* No. 94-8219, 1995 U.S.App. LEXIS 2740 (Apr. 17, 1995) (applying *Fretwell* to ineffectiveness at guilty plea).

*2 In the context of a guilty plea, a petitioner may show prejudice only if he establishes that, but for counsel's ineffectiveness, he would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A petitioner must "affirmatively prove" prejudice. *Washington,* 466 U.S. at 693. The mere allegation of prejudice is insufficient to satisfy *Washington* 's prejudice requirement. *Armstead,* 37 F.3d at 206.

Whether his attorney's alleged errors were objectively reasonable or not, Williams has not established that but for the alleged errors, he would not have pleaded guilty. *See Fretwell,* 113 S.Ct. at 844. He argues that absent his attorney's errors, there is a "reasonable probability" that the trial court would have had reasonable doubt about his guilt. Specifically, Williams contends that had his attorney objected to the invalid indictment, he would have gone to trial and would have been found not guilty because the factfinder could not have found the "necessary mental state" for criminal liability because of the absence of pleading or proof of that state.

We specifically determined, however, that the understood definition of the word "threaten" necessarily included intent. *McKay,* 12 F.3d at 69. We stated that the wording of the indictments was sufficient to provide Williams with notice of the essential elements of the charges against him, including intent. Accordingly, Williams was not prejudiced by his attorney's failure to object to the indictments. Williams's ineffectiveness claim is without merit.

### IV.

Williams also argues that he did not knowingly and voluntarily plead guilty to the three robbery charges.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3

55 F.3d 632, 1995 WL 313943 (C.A.5 (Tex.))
**(Cite as: 55 F.3d 632)**

FN2 He contends that even though we stated that " the common definition of the word 'threaten' necessarily includes intent and substitution of ' threaten' for 'intentionally or knowingly' provides adequate notice of the charges," *McKay*, 12 F.3d at 69, the record does not "affirmatively establish that petitioner understood those charges and knowingly plead [*sic* ] guilty to the necessary elements of the offense." Because this court previously determined that the indictments were sufficient to give Williams notice of the charges against him, his contention is without merit. *See id.*

> FN2. Williams also argues that the district court erred by not confirming that the pleas were entered knowingly and voluntarily pursuant to *Boykin v. Alabama*, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Williams raises this issue for the first time on appeal. This court does not consider issues not raised in the district court. "[I]ssues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Accordingly, Williams's contention is not subject to review.

AFFIRMED.

C.A.5 (Tex.),1995.
Williams v. Scott
55 F.3d 632, 1995 WL 313943 (C.A.5 (Tex.))

Briefs and Other Related Documents (Back to top)

• 1995 WL 17078166 (Appellate Brief) Reply Brief of Petitioner-Appellant (Feb. 27, 1995) Original Image of this Document (PDF)
• 1994 WL 16067389 (Appellate Brief) Brief of Petitioner-Appellant (Dec. 23, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on January 23, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

Christian Dejesus
SBI No. 501798
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: January 22, 2007