IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHRISTIAN DEJESUS,                    :
                                      :
                  Petitioner,         :
                                      :
    v.                                :    Civ. Act. No. 06-553-JJF
                                      :
THOMAS CARROLL, Warden, and           :
ATTORNEY GENERAL OF THE STATE         :
OF DELAWARE,                          :
                                      :
                  Respondents.        :

_____

Christian Dejesus.  Pro se Petitioner.

James T. Wakley, Deputy Attorney General of the DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for
Respondents.

_____

**MEMORANDUM OPINION**

December 12, 2007
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Christian Dejesus ("Petitioner"). (D.I. 1.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2003, Marisol Ayala was sitting on the porch of her residence and watched a man, later identified as Petitioner, drive up in a large green automobile. Petitioner exited the car, and asked Ms. Ayala for the whereabouts of a man named "Moreno." When Ms. Ayala said that the Moreno was not in her house, Petitioner grabbed her by the arm, pointed a gun at her head, and told her to open the door to the house. Crying and screaming, Ms. Ayala opened the outside door and knocked on the inside door, which her five-year-old daughter had locked. When the little girl unlocked the door, Petitioner yanked it open, grabbed the child, and held his gun to her head. He threatened to kill the little girl if Ms. Ayala did not tell him where Moreno was. The mother cried and screamed, saying over and over that she did not know Moreno's whereabouts, and begged Petitioner to leave the child alone. See generally, DeJesus v. State, 2005 WL 2360680 (Del. Super. 2005).

Ms. Ayala's teen-aged daughter was in the kitchen when she

1

heard a commotion in the other room.  After seeing Petitioner

holding a gun to her younger sister's head, she ran from the

house because she was pregnant and feared for the safety of her

unborn child.  The older daughter saw Petitioner drive away in a

blue/green car.  Id.

In May 2004, a Delaware Superior Court jury convicted

Petitioner of first degree burglary, first degree unlawful

imprisonment, four counts of possession of a deadly weapon during

the commission of a felony, and three counts of aggravated

menacing.  The Delaware Superior Court sentenced Petitioner to

twelve years of imprisonment followed by a term of probation.

Petitioner appealed, and the Delaware Supreme Court affirmed his

conviction and sentence.  DeJesus v. State, 865 A.2d 521 (Table),

2005 WL 65865 (Del. Jan. 10, 2005).

In March 2005, Petitioner filed a motion for state post-

conviction relief pursuant to Delaware Superior Court Criminal

Rule 61 ("Rule 61 motion"), asserting five claims: (1) the

prosecutor illegally added one count of unlawful imprisonment and

an additional weapons charge to the indictment; (2) a police

detective coerced the witnesses into falsely testifying at trial;

(3) Petitioner's brother committed the crimes; (4) defense

counsel provided ineffective assistance because he failed to

object to the prosecutorial misconduct, he failed to object to

the police coercion of testimony, he failed to cross-examine Ms.

2

Ayala's then six-year old daughter, and he failed to discover
that Petitioner's brother committed the crimes; and (5) the
Superior court failed to provide him with a translator during his
trial.  The Superior Court denied the Rule 61 motion.  DeJesus,
2005 WL 2360680 (Del. Super. Ct. Sept. 27, 2005).  The Delaware
Supreme Court affirmed the Superior Court's judgment in June
2006.  DeJesus v. State, 906 A.2d 806 (Table), 2006 WL 1506205
(Del. Jan. 10, 2006).

Petitioner timely filed the instant Petition in September
2006.  (D.I. 1.)  The State filed an Answer, asserting that the
Petition should be dismissed because the claims do not warrant
relief under 28 U.S.C. § 2254(d)(1).  (D.I. 15.)

## II.   LEGAL PRINCIPLES

### A.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot
review the merits of claims asserted in a habeas petition unless
the petitioner has exhausted all means of available relief for
the claims under state law.  28 U.S.C. § 2254(b);  O'Sullivan v.
Boerckel, 526 U.S. 838, 842-44 (1999);  Picard v. Connor, 404
U.S. 270, 275 (1971).  A petitioner satisfies the exhaustion
requirement by "fairly presenting" the substance of the federal
habeas claim to the state's highest court, either on direct
appeal or in a post-conviction proceeding, in a procedural manner
permitting the state courts to consider it on the merits.  See

3

Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The "fair presentation" requirement of the exhaustion doctrine is satisfied if the petitioner presented a claim to the state courts that is substantially equivalent to the claim asserted in his federal habeas petition. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review of those claims, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160. A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).

To demonstrate cause for a procedural default, the

4

petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d

5

333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If, however, a petitioner presents a federal district court with a federal habeas claim that the state's highest court adjudicated on the merits, then the district court must review the habeas claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision is an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Additionally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of

6

§ 2254(d)(2) applies to factual decisions).

## III.  DISCUSSION

Petitioner asserts the following claims: (1) defense counsel failed to file a motion to dismiss all charges or dismiss the indictment after Ms. Ayala wrote two letters stating that she erroneously identified Petitioner as the intruder; (2) defense counsel failed to file a motion to sever charges added by the State in an indictment returned after Petitioner's preliminary hearing;[1] (3) counsel failed to cross-examine the six-year-old victim; (4) counsel failed to filed an appeal on Petitioner's behalf; (5) counsel failed to discover that Petitioner's brother committed the crimes;[2] and (6) the police and the prosecutor

---

[1]Petitioner actually contends that the State improperly "enjoined" an April 2003 indictment (charging 9 counts) with a March 2003 indictment (charging 7 counts). The record reveals that the grand jury only returned one indictment, in April 2003. Petitioner, however, was charged with 7 counts during a preliminary hearing in March 2003. (D.I. 22, Super. Ct. Dkt.) Rather than summarily dismiss the instant claim as factually baseless, the Court liberally construes Claim Two to challenge the new counts added in the indictment because they were added after his preliminary hearing.

[2]In a letter filed after the State's Answer, Petitioner asks the Court to add several new grounds for habeas relief, claiming that he originally asserted the grounds in his Rule 61 motion, and that he incorporated the Rule 61 motion when he filed his federal Petition. (D.I. 24.) Considering that Petitioner did, in fact, present the instant claim regarding counsel's failure to investigate his brother as a suspect, the Court will consider the ground. (D.I. 24, at p.7.) However, the following two allegations in Petitioner's letter present new claims: (1) counsel was ineffective for failing to challenge the impermissible identification of Ms. Ayala under Del. Code Ann. tit. 11, § 3507(a); and (2) the Superior Court did not have

coerced Ms. Ayala into falsely testifying against Petitioner by incarcerating her prior to trial. (D.I. 1.)

## A. Claim One: Counsel failed to file motion to dismiss based on Ms. Ayala's two letters of recantation

In Claim One, Petitioner argues that counsel should have filed a pre-trial motion to dismiss his case or indictment because Ms. Ayala was incarcerated to ensure her presence at trial even though she had already written two letters professing Petitioner's innocence. After reviewing the record, the Court concludes that Petitioner did not exhaust state remedies for Claim One because he did not "fairly present" a substantially equivalent claim to the Delaware State Courts in his state collateral proceeding. In his post-conviction appellate brief, Petitioner argued that counsel refused to present unidentified mitigating evidence due to counsel's belief that "the victim's testimony would outweigh any mitigating factors." (D.I. 2, Exh. D at p. 3.) Petitioner then argued that the Delaware Supreme Court abused its discretion during his direct appeal when it failed to determine why the jury believed Ms. Ayala's trial testimony

_____

jurisdiction over his case because "the remaining three counts of aggravated menacing charges, counts II through VII of indictment, do not incorporate the 1st degree burglary by reference . . . in violation of State v. Minnick, 168 A.2d 93, 97 (Del. 19650)." (D.I. 24, at pp. 3-6.) The record reveals that Petitioner did not present these claims in his state collateral proceeding. Therefore, for the same reasons discussed with respect to Claim One, infra at pp. 8-9, the Court concludes that it is procedurally barred from reviewing the additional two claims.

rather than her two letters of recantation. Id. However, nothing in Petitioner's Rule 61 motion or in his claim on post-conviction appeal refers to counsel's failure to file a pre-trial motion on the basis of Ms. Ayala's two letters of recantation and her pre-trial incarceration.

At this juncture, Delaware Superior Court Criminal Rule 61(i)(2) would bar Petitioner from presenting Claim One in a new state collateral proceeding. See Lawrie v. Snyder, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(finding federal habeas claim procedurally defaulted due to the bar contained in Rule 61(i)(2)). Therefore, Claim One is procedurally defaulted, and the Court cannot review its merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Petitioner has not provided any explanation for his failure to present the instant claim to the Delaware Supreme Court in his post-conviction appeal. In the absence of cause, the Court does not need to address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will dismiss Claim One as procedurally barred.

**B. Claim Two: Counsel's failure to file a motion to sever charges added to indictment returned after preliminary hearing**

In Claim Two, Petitioner contends that counsel provided ineffective assistance by failing to file a motion to sever the two new counts added to the indictment returned by the grand jury after his preliminary hearing and after he was out on bail for six weeks. Petitioner asserts that counsel should have presented the following arguments in a motion to sever the new counts: (1) counts eight and nine were joined in violation of "Delaware and Federal Rules of Criminal Procedures 8(a) and 14" (D.I. 2, at p.4.), because the two new counts were unrelated and separate from the original crime (D.I. 1, Ground Two.), and also because the two offenses were of the same or similar character (D.I. 2, at p.7.); (2) the additional counts were improperly joined because they were added after Petitioner's preliminary hearing and after he had been out on bail for six weeks, which violated his constitutional rights (D.I. 1, Ground Two; D.I. 2, at p. 4.); (3) the joinder of the two counts substantively amended the original indictment in violation of the grand jury clause (D.I. 2, at p.4.); and (4) the joinder of claims was due to selective prosecution of Latin defendants. See (D.I. 24, at p. 3.)

Petitioner did not raise the allegation regarding the grand jury clause in his state collateral proceedings. See Marra v. Larkins, 46 Fed. Appx. 83, 90-92 (3d Cir. 2002)(non-

10

precedential)(rejecting petitioner's argument that "raising some ineffective assistance of counsel claims is sufficient to preserve all putative ineffective assistance of counsel claims.") At this point in time, the issue of counsel's failure to raise an argument based on the grand jury clause is procedurally defaulted because Rule 61 would preclude Petitioner from raising the issue in a new Rule 61 motion.  Petitioner does not provide any reason for his procedural default, nor does he demonstrate prejudice. Therefore, the Court cannot review the merits of this particular ineffective assistance of counsel allegation.

However, Petitioner did present the other three arguments regarding counsel's failure to file a severance motion to the Superior Court in his Rule 61 motion.  Although the Superior Court did not explicitly analyze any of the three arguments, a close examination of the Superior Court's decision reveals that the state court did implicitly address the arguments.  For instance, with respect to Petitioner's contention regarding the Delaware Superior Court Criminal Rules and the Federal Rules of Criminal Procedure, the Superior Court concluded that counsel did not perform deficiently by failing to object to the additional charges because the "additional charges meshed with the facts as shown by the evidence and as defined the by the law."  DeJesus, 2005 WL 2360680, at *1-2.  With respect to the selective prosecution argument and the argument that returning an

11

indictment with two claims not originally presented during Petitioner's preliminary hearing violated his constitutional rights, the Superior Court cited to Wayte v. United States, 470 U.S. 598, 607 (1985)(involving selective prosecution), and explained that the "State has broad although not unlimited discretion to prosecute as it sees fit." Id. at 2. The Superior Court then held that counsel did not perform ineffectively by failing to raise these arguments because the prosecutor did not abuse her discretion in adding the two counts. Id.

In turn, the Delaware Supreme Court affirmed the Superior Court's decision "on the basis of and for the reasons set forth" in its written opinion. DeJesus, 2006 WL 1506205, at *1. Accordingly, the Court will review the remaining arguments contained in Claim Two under § 2254(d)(1) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, Strickland.

The clearly established Federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under the first Strickland prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. Under the second

12

Strickland prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991); Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, the Superior Court analyzed Claim Two within the framework provided by Strickland, and the Delaware Supreme Court affirmed that decision. Therefore, the Delaware Supreme Court's decision is not contrary to Strickland. Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware State Courts unreasonably applied Strickland in denying Claim Two. In so doing, the Court will analyze whether the arguments posed by

13

Petitioner regarding the misjoinder of the two claims have merit.

It is well-settled that a prosecutor has broad pre-trial discretion in deciding upon the charges to bring against a defendant. See United States v. Goodwin, 457 U.S. 368, 384 (1982). Further, a prosecutor's initial charging decision does not freeze the prosecutor's future conduct during the pre-trial stage, especially when that conduct involves deciding to add additional charges. Id.; Maxion v. Snyder, 2001 WL 848601, at *12 (D. Del. July 27, 2001)("There is nothing wrong with [the] ordinary and routine procedure of changing the charges a defendant faces."). Therefore, pursuant to the precedent of Goodwin, the prosecutor in Petitioner's case was free to bring additional charges after the preliminary hearing, so long as the prosecutor had probable cause to believe that Petitioner committed the two additional charges added in the April indictment.

In this case, Petitioner was arrested on March 9, 2003, and a preliminary hearing was held on March 17, 2003. (Del. Super. Ct. Dkt. at No. 1.) During the preliminary hearing, the Court of Common Pleas found probable cause to believe Petitioner had committed three counts of possession of a deadly weapon during the commission of a felony, first degree burglary, and three counts of aggravated menacing. Petitioner was released on bail. On April 7, 2003, a grand jury returned an indictment charging

14

Petitioner with the original seven charges presented at Petitioner's preliminary hearing, along with a new count of possession of a deadly weapon during the commission of a felony and a new count of first degree unlawful imprisonment. Petitioner was released on bail on April 25, 2003. See generally Id. On May 14, 2004, the jury convicted Petitioner on all nine counts. DeJesus, 2005 WL 65865, at *1.

The purpose of a preliminary hearing is "to afford an arrested person a prompt determination as to whether there is probable cause to hold him for grand jury action." United States v. Dorsey, 462 F.2d 361, 362 (3d Cir. 1972)(internal citations omitted). In turn, the return of an indictment by a grand jury is conclusive proof of the existence of probable cause. See Maxion, 2001 WL 848601, at *12 (D. Del. July 27, 2001). Here, Petitioner has failed to demonstrate anything remiss in the "ordinary and routine procedure of [the prosecutor's decision to] change the charges a defendant faces" as a result of an ongoing investigation. Id. The mere fact that a grand jury returned an indictment containing two new charges not originally presented during Petitioner's preliminary does not, without more, implicate Petitioner's due process rights.

Petitioner's next contention, that the two counts were improperly added to the indictment as a result of selective

15

prosecution, is also without merit.[3]  In order to establish a prima facie case of selective prosecution, Petitioner must demonstrate that "persons similarly situated have not been prosecuted," and that the "decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right."  United States v. Schoolcraft, 879 F.2d 64, 69 (3d Cir. 1989).  Here, Petitioner "merely allege[s] without any supporting evidence" that the prosecutor engaged in the selective prosecution of Latin defendants.  Therefore, Petitioner has not presented a viable selective prosecution claim.

Finally, the Court considers Petitioner's claim regarding counsel's failure to challenge the joinder of the two offenses as improper under Delaware Superior Court Criminal Rules 8(a) and 14, and Federal Rules of Criminal Procedure 8 and 14.  As an initial matter, Petitioner's argument regarding the Federal Rules of Criminal Procedure is meritless because the Federal Rules of Criminal Procedure do not apply to Delaware criminal proceedings. As for Petitioner's argument regarding Delaware Superior Court Criminal Rule 8(a), Rule 8(a) provides that "two or more offenses

---

[3]Petitioner asks the Court to incorporate the arguments presented in his Rule 61 motion and post-conviction appeal. (D.I. 24.) Therefore, the Court's conclusion regarding Petitioner's selective prosecution argument is based upon the arguments contained in Petitioner's Rule 61 motion.

16

may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The Superior Court in Petitioner's case implicitly held that counts 8 and 9 were properly joined under Rule 8(a), See supra at pp. 10- 11, and the Delaware Supreme Court affirmed that decision.  The Court is bound to accept the Superior Court's (and, in turn, the Delaware Supreme Court's) holding that counts 8 and 9 were properly joined under Delaware law.[4]  See DeJesus, 2005 WL 2360680, at *2.  Bradshaw v. Richey, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Therefore, Petitioner's argument regarding Delaware Superior Court Criminal Rule 8 is meritless.

To summarize, the Court concludes that Petitioner's three arguments presented to support a motion to sever the two additional counts are without merit.  Therefore, counsel did not provide ineffective assistance by failing to file a meritless severance motion.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).  Accordingly, the Court concludes that the

---

[4]As for Petitioner's argument with respect to Rule 14, Delaware Superior Court Rule 14 governs the type of relief (i.e., severance) available in cases of prejudicial joinder.  If the counts were properly joined under Rule 8(a), then there was no need for the Superior Court to sever the counts under Rule 14.

17

Delaware Supreme Court did not unreasonably apply Strickland in affirming the Superior Court's judgment.

## C. Claim Three: Counsel's failure to cross-examine the six-year-old victim

During Petitioner's trial, the six-year-old victim testified that a dark-skinned man came to her house and pointed a gun at her face and that her older sister watched. Petitioner contends that defense counsel performed ineffectively because he failed to cross-examine the six-year-old, and that counsel's failure prejudiced his case because the un-impeached testimony provided direct evidence connecting him to the crime. The Delaware state courts denied the instant claim after determining that Petitioner failed to demonstrate prejudice under Strickland. Therefore, the Court will review Claim Three under § 2254(d)(1) to determine if the Delaware Supreme Court's decision warrants habeas relief.

It is well-settled that an attorney's decision regarding the cross-examination of witnesses is strategic in nature and will not constitute the basis for ineffective assistance if such decisions are reasonably made. See Diggs v. Owens, 833 F.2d 439, 444-45 (3d Cir. 1987). The record does not reveal counsel's reasons for not cross-examining the child. However, in this case, the six-year-old's testimony did not directly link Petitioner to the crime because the child generically described the intruder as a dark-skinned man with black hair, and as Petitioner repeatedly asserts, he is light-skinned. (D.I. 2,

18

Attcht. 2 at pp. 9-10.) Further, considering that the six-year old repeatedly stated that the incident saddened her, the jury may have viewed any cross-examination of the child as unnecessarily distressing for the child. Therefore, to the extent counsel opted against cross-examining the child because of her young age and also because counsel foresaw possible negative ramifications from such cross-examination, the Court concludes that counsel's decision was reasonable. Accordingly, the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, Strickland.

### D.   Claim Four:   Counsel's failure to file an appeal

In Claim Four, Petitioner asserts that counsel failed to file an appeal on Petitioner's behalf despite Petitioner's request to do so. The record reveals that counsel did, in fact, file an appellate brief along with a Rule 26 motion to withdraw. Therefore, Petitioner cannot satisfy either Strickland prong because his claim regarding counsel's failure to file an appeal is factually baseless.

However, after reviewing the filings in Petitioner's state collateral proceeding, the Court concludes that Petitioner's true complaint is not that counsel failed to file an appeal, but rather, that counsel filed a non-merit appellate brief and a motion to withdraw from the case pursuant to Delaware Supreme Court Rule 26. (D.I. 2, Attcht. at p. 53.) Petitioner presented

19

this claim in his Rule 61 motion, but neither the Superior Court nor the Delaware Supreme Court addressed the claim's merits. Therefore, the Court will review the claim de novo.[5] See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004).

The Supreme Court has held that an attorney may withdraw from representing a client on appeal, so long as the attorney follows a procedure that "affords adequate and effective appellate review to [the] indigent defendant[]" and therefore "reasonably ensures that an indigent appeal will be resolved in a way that is related to the merit of that appeal." Smith v. Robbins, 528 U.S. 259 (2000). In Anders v. California, 386 U.S. 738 (1967),[6] the United States articulated a procedure designed to protect an indigent appellant's constitutional rights when his attorney moves to withdraw. Pursuant to Anders, defense counsel must conduct a "conscientious examination" of the case before seeking to withdraw from the case, and then file an appellate brief "referring to anything in the record that might arguably support the appeal." Anders, 386 U.S. at 744. The defendant must be given a copy of counsel's brief and given an opportunity

---

[5]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams v. Taylor, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

[6]Although the Smith Court acknowledged that there may be procedures other than the one articulated in Anders, Anders is still good law. Smith, 528 at 273.

20

to raise any points he wishes.  Id.  Then, the state appellate
court must conduct a "full examination of all the proceedings to
decide whether the case is wholly frivolous."  Id.  "If the court
is satisfied that counsel has diligently investigated the
possible grounds of appeal, and agrees with counsel's evaluation
of the case, then leave to withdraw may be allowed and leave to
appeal may be denied."  Id. at 741-42;  McCoy v. Court of Appeals
of Wisconsin, District 1, 486 U.S. 429, 442 (1988).

In Delaware, motions to withdraw from representing an
appellant are governed by Delaware Supreme Court Rule 26(c)
which, in turn, is modeled on the procedure set forth in Anders.[7]
See Del. Sup. Ct. R. 8, Committee Comment.  The record in
Petitioner's case reveals that counsel followed the proper
procedure for withdrawal under Rule 26, and therefore, he also
followed the proper withdrawal procedure articulated in Anders.
For example, counsel thoroughly reviewed the record and
determined that there were no meritorious appellate claims.
Counsel then advised Petitioner of that finding, and filed an
appellate brief on Petitioner's behalf that included the claims
Petitioner wished to raise.  Finally, the Delaware Supreme Court
conducted its own independent review of the record, determined
that counsel made a conscientious examination of the record

---

[7]Although the Smith Court acknowledged that there may be
procedures other than the one articulated in Anders, Anders is
still good law.  Smith, 528 at 273.

21

before moving to withdraw, and concluded that Petitioner's appeal
was wholly without merit and that his case was "devoid of any
arguably appealable issue."  DeJesus, 2005 WL 65865, at *2.
Thus, defense counsel did not provide ineffective assistance by
filing a non-merit appellate brief and a Rule 26(c) motion to
withdraw.  Accordingly, the Court concludes that Claim Four does
not warrant habeas relief.

## E.  Claim Five: Counsel failed to discover that Petitioner's brother committed the crime

In Claim Five, Petitioner argues that counsel failed to
investigate the possibility that Petitioner's brother committed
the crimes.  The Superior Court denied the claim as meritless,
stating

> Having heard the Defendant testify at trial, the Court has
> difficulty treating this claim as anything but a highly
> optimistic afterthought.  Defendant spoke from the stand
> about the room he and his brother had rented together, the
> padlock they put on the door to their room, and the car he
> occasionally let his brother drive.  He never stated that
> his brother committed the crimes or that he and [his]
> brother could be mistaken for each other, although he had
> ample opportunity to so testify.  Nor did Defendant make
> this claim on direct appeal, although he raised two other
> arguments.  This assertion defies common sense and does not
> constitute a viable claim of ineffective assistance of
> counsel.

DeJesus, 2005 WL 2360680, at *3.  The Delaware Supreme Court
affirmed the Superior Court's judgment.  Therefore, the Court
must review Claim Five under § 2254(d)(1) to determine if the
Delaware Supreme Court's decision was either contrary to, or an
unreasonable application of, Strickland.

22

Having reviewed the record, the Court concurs with the Superior Court's summary of Petitioner's testimony and appellate claims. The Court also notes that Petitioner does not contend that he ever suggested investigating his brother as a potential suspect to counsel. Accordingly, the Court concludes that the Delaware Supreme Court's decision does not warrant habeas relief under § 2254(d)(1).

**F. Claim Six: Witness testified falsely due to coercion**

In his final claim, Petitioner asserts that the State utilized impermissibly suggestive procedures in obtaining Ms. Ayala's identification of him. However, upon closer examination, the Court concludes that Petitioner's true argument is that the State violated his due process rights by incarcerating Ms. Ayala prior to trial in order to coerce her to testify falsely. Petitioner appears to suggest that Ms. Ayala's two letters of recantation written prior to trial demonstrate the falsity of her testimony during the trial. (D.I. 2, at p. 2 and Part 4.)

Petitioner presented this claim to the Superior Court in his post-conviction proceeding, and the Superior Court denied the claim as meritless. More specifically, the Superior Court explained that the jury voted to convict Petition after hearing both versions of Ms. Ayala's recitation of the events, and then the Superior Court held that "the jury is the finder of fact, and the jury has spoken." DeJesus, 2005 WL 2360680, at *2. The

23

Delaware Supreme Court affirmed the Superior Court's decision. Thus, the Court must determine if the Delaware Supreme Court's decision is contrary to, or an unreasonable application of, clearly established Federal law.

The Court first considers Petitioner's suggestion that the State did something underhanded by incarcerating Ms. Ayala prior to trial. According to the United States Supreme Court, "[t]o ensure that justice is done, it is imperative to the function of the courts that compulsory process is be available for the production of evidence needed either by the **prosecution** or by the defense." Taylor v. Illinois, 484 U.S. 400, 408 (1988)(internal citations omitted)(emphasis added). In Delaware, the Superior Court is authorized to issue subpoenas or other warrants "for summoning or bringing any person to give evidence in any matter triable before it and may enforce obedience by fine or imprisonment." Del. Code Ann. tit. 11, § 5102.

In this case, the record reveals that a "State's witness subpoena" was issued on April 21, 2004, and returned on April 27, 2004. (D.I. Super. Ct. Crim. Dkt. at Entry Nos. 25 and 26.) It appears that Ms. Ayala refused to testify,[8] and therefore, on May 11, 2004, the State filed a "Motion For The Issuance Of A Warrant/Capias For a Resident Material Witness." Id. at No. 27

---

[8](D.I. 22, Appellant's Op. Br. in DeJesus v. State, NO. 499,2005 at pp. 4-5.)

24

The Superior Court issued a material witness capias for Ms. Ayala that same day. Id. at No. 28. Ms. Ayala was incarcerated for one night on May 12, 2004, and Petitioner's trial started on May 13, 2004.

Nothing in the record indicates that the prosecutor or police incarcerated Ms. Ayala to coerce her into giving a particular testimony, or that Ms. Ayala changed her testimony as a result of her incarceration. In fact, Ms. Ayala read her letters of recantation aloud during the trial, and the letters were admitted into evidence. The jury also knew that Ms. Ayala had been incarcerated to secure her appearance at, and testimony during, Petitioner's trial. Therefore, the Court rejects Petitioner's argument that Ms. Ayala's particular testimony was coerced.

Additionally, although Ms. Ayala testified that her initial police identification of Petitioner was voluntary,[9] and that, when first questioned by the police, she referred to the intruder as "Chris," Ms. Ayala did not explicitly identify Petitioner during her trial testimony. She expressed uncertainty with respect to her identification of Petitioner's photograph,

_____

[9]After the burglary, the police officer investigating the case collected six photographs of men generally matching the description of the burglar, and he showed the photos to Ms. Ayala and her older daughter. Both women identified the photograph of Petitioner as the man who burglarized their home. DeJesus, 2005 WL 2360680, at *2.

25

explaining that Petitioner and his brother (or cousin) looked alike and, therefore, given Petitioner's resemblance to his brother (or cousin), she could not definitively state during the trial whether it was Petitioner who invaded her home and held a gun to her head and her six-year-old daughter's head.  (D.I. 22, Transcript attached to "Motion for Postconviction Relief," at pp. 35-59.)

Finally, the United States Supreme Court has opined that "a federal habeas court faced with a record of historical facts that supports conflicting interests must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson v. Virginia, 443 U.S. 307, 326 (1979).  After reviewing Claim Five in context with the entire record and pursuant to the principle articulated in Jackson, the Court believes that it was reasonable for the Delaware State Courts to conclude that the jury found Ms. Ayala's initial identification of Petitioner to the police, as well as the substance of her testimony, more credible than her two letters of recantation.  Accordingly, the Court concludes that Claim Five does not warrant relief.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a

26

certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

27